UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARLANDUS M. NOLEN,

       Petitioner,

v.                                      Case No. 2:07-cv-90
                                                  HON. GORDON J. QUIST

GERALD HOFBAUER,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Arlandus M. Nolen filed this petition for writ of habeas corpus challenging the validity of his conviction for prisoner in possession of a dangerous weapon. Petitioner was convicted and sentenced to 36 to 90 months imprisonment. Petitioner maintains that his conviction was obtained in violation of his federal rights. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his complaint:

I.        Lack of probable cause to bind petitioner over for trial.

II.       Violation of 14 day rule – right to speedy trial.

III.     Violation of due process – destruction of evidence.

IV.     Ineffective assistance of trial counsel.

V.      Violation of constitutional right to a speedy trial.

VI.     Presentation of false evidence.

VII.    Petitioner was in shackles in the presence of the jury.

VIII.   Trial court erred by assigning petitioner an attorney that he had a conflict of interest with.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state

court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner maintains there was not probable cause justifying his bind over on the charges and that Michigan's fourteen day rule for a preliminary examination was violated. The Michigan Court of Appeals rejected these claims finding that there existed sufficient evidence to bind petitioner over for trial and that the fourteen day rule under MCL § 766.4 and the 180 day rule under MCL § 780.131 were not violated. Petitioner has presented these issues solely as a matter of state law. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed.

Petitioner has also raised a speedy trial claim under the Sixth Amendment. The Michigan Court of Appeals denied petitioners' claim explaining:

> Defendant also now asserts his constitutional right to a speedy trial. US Const, Am VI; Const 1963, art. 1, § 20. Defendant is entitled to a separate analysis of whether his constitutional right to a speedy trial was violated. *People v Farmer*, 127 Mich App 472, 478; 339 NBW2d 218 (1983). Constitutional issues are reviewed de novo. *People v Levandoski*, 237 Mich App 612, 619; 603 NW2d 831 (1999). To determine if a pretrial delay violated a defendant's right to a speedy trial, a four-part balancing test is applied, taking into consideration (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). The overall record supports a finding that defendant was not denied his right to a speedy trial. Defendant's numerous and meritless motions and other tactics were primarily responsible for delaying the start of his trial. Defendant was even granted a requested adjournment of his trial. While defendant claims to have been prejudiced by these delays, he also benefitted from them, as they allowed him to complete his legal maneuvering, as well as to research and investigate his case. The fact that defendant failed to object to any delays occurring after the preliminary examination only strengthens the inference that they existed for his own benefit. Defendant cannot take measures to

> lengthen and prolong the trial process, benefit from those measures,
> and then subsequently complain about the length of the trial process.
> Reversal is unwarranted.

The Michigan Court of Appeals properly considered the four factors that must be considered in determining whether a delay violated the Constitution. *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999); *United States v. Smith*, 94 F.3d 204, 207 (6th Cir. 1996) (*citing Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In the opinion of the undersigned, the Michigan Court of Appeals properly determined that much of the delay was attributed to petitioner and that no prejudice resulted. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that his due process rights were violated when two pieces of evidence were destroyed before petitioner could make a request for production of the evidence. Petitioner claims the destruction of the gloves and the police officer's notes violated his rights. The Michigan Court of Appeals denied these claims explaining:

> Defendant next asserts that his constitutional right to due process of law was violated when two pieces of evidence, the gloves used in the incident and police notes taken of the incident, were destroyed before defendant could request their production. "Whether defendant's right to due process was violated is a question of law. This Court reviews questions of law de novo." *People v Walker*, 234 Mich App 299, 302; 593 NW2d 673 (1999).
>
> In *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992), this Court stated:
>
> > Absent the intentional suppression of evidence or a
> > showing of bad faith, a loss of evidence that occurs

before a defense request for its production does not require reversal. Similarly, the routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal. Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith. [Citations omitted.]

Here, neither the destruction of the gloves nor the loss of the police notes amounts to a showing of bad faith or the intentional suppression of evidence. The record reveals that the gloves were destroyed pursuant to standard Department of Corrections [DOC] policy before defendant was charged in the case. That the DOC acted according to normal or routine practices tends to show that it acted in good faith. Also, when asked at trial if the gloves were large enough to conceal the weapon, officer Yon conceded that they were large enough to conceal it. Thus, defendant found an alternative way to prove his point. The whereabouts of the police notes at issue are not clearly reflected in the record. There is simply no evidence that they were destroyed in bad faith or intentionally suppressed, nor that they even contained exculpatory evidence. Accordingly, defendant has failed to establish that destruction of the notes and gloves violated his right to due process of law.

Where the evidence is potentially exculpatory, its destruction does not violate due process, unless the petitioner can establish bad faith. *Killian v. United States*, 368 U.S. 231, 242 (1961); *California v. Trombetta*, 467 U.S. 479, 487 (1984). Petitioner has asserted nothing which could establish that the evidence was exculpatory. Similarly, petitioner failed to show bad faith on the part of the government. In the opinion of the undersigned, the Michigan Court of Appeals' decision was not unreasonable.

Petitioner alleges ineffective assistance of counsel. Petitioner claims that his counsel lacked interest in the case, failed to help petitioner file pretrial motions, failed to call some witnesses, failed to challenge some jurors on voir dire, and failed to object to petitioner and a defense witness being shackled in the presence of the jury. The Michigan Court of Appeals rejected this claim

finding that petitioner failed to show deficient performance by counsel or any resulting prejudice.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions

might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Counsel's decisions on which motions to raise, which evidence to present and which witnesses to call are generally matters of trial strategy. Petitioner has not shown that counsel erred by failing to raise a particular motion, present evidence or call a witness. Similarly, petitioner has not shown that counsel erred in the voir dire of jurors. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges that the prosecutor elicited false testimony from Lieutenant Michael Yon. The Michigan Court of Appeals rejected this claim finding that "the record reveals no evidence that any prosecution witness gave false testimony." In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest <u>without due process of law</u>." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). In order to

establish a due process violation based upon the presentation of false or misleading testimony or evidence, a petitioner must show that the prosecutor knowingly elicited false material evidence. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998). Mere inconsistencies in testimony fails to establish knowing use of false testimony. *Id.* As noted above, the Due Process Clause merely gives an accused person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Martinez*, 444 U.S. at 284, n.9. Petitioner has not shown that false testimony was presented or that the prosecutor knowingly elicited false testimony. Petitioner had the opportunity to cross examine the witness and to have the jury weigh the credibility of the witness. Therefore, in the opinion of the undersigned, this testimony did not violate due process.

Petitioner claims that his rights were violated when the jury observed petitioner and a defense witness in shackles during trial. The Michigan Court of Appeals rejected this claim explaining:

> Defendant's next claim is that he was prejudiced by the jury seeing him shackled during trial, coming in and out of the law library and into the courtroom, and while entering the elevator. He claims that he was also prejudiced by the shackling of a defense witness while giving testimony. We cannot ascertain from the record whether defendant was shackled in view of the jury; therefore, we have no basis for reversal in this regard. *People v LaBelle*, 231 Mich App 37, 39; 585 NW2d 756 (1998). There is, however, an indication in the record that the witness was shackled, although the reasons for the shackling remain unknown to us. Defendant failed to preserve this issue for appeal, and thus our review is for plain error affecting defendant's substantial rights, i.e., a showing of prejudice. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Furthermore, even where it is determined that plain error occurred affecting a defendant's substantial rights, this Court must exercise its discretion and only reverse the conviction when the error resulted in the conviction of an actually innocent defendant or when the error

seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Id*. On the record before us, defendant fails to establish a plain error affecting his substantial rights and, assuming error, we cannot conclude that the error resulted in the conviction of an actually innocent person or seriously affected the fairness of the judicial proceedings. Moreover, assuming that defendant was shackled and acknowledging that the witness was shackled, the record does reflect that defendant has a violent history and was incarcerated with the DOC, where he was still able to procure a weapon, and that the witness was likewise incarcerated, which would have given the trial court a sound basis to keep them in shackles during the trial. *See People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996). [Footnote omitted].

Although petitioner failed to preserve this issue for appeal it is clear that petitioner's rights were not violated. A petitioner is obligated to show prejudice when he claims that the jury observed him in shackles during trial. *United States v. Mayes*, 158 F.3d 1215, 1225 (11th Cir. 1998); *United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000) (Juror's observation of defendant in shackles did not require reversal where defendant could show no actual prejudice). Petitioner cannot show that prejudice resulted from any juror viewing him in shackles. The jury was aware that petitioner and the defense witness were prisoners at the time of the alleged crime and at the time of trial. In the opinion of the undersigned, petitioner cannot show that the Michigan Court of Appeals' decision was unreasonable.

Petitioner alleges that it was error for the court to reappoint the same attorney that previously represented petitioner before petitioner had requested to represent himself. The Michigan Court of Appeals denied this claim stating:

Finally, defendant argues that the trial court erred by reappointing defendant the same attorney who had previously represented him in this case. "An indigent defendant is entitled to counsel. He is not entitled to counsel of his choice nor is he entitled to different counsel

whenever and for whatever reason dissatisfaction arises with counsel provided for him." *People v Bradley*, 54 Mich App 89, 95; 220 NW2d 305 (1974). A defendant is entitled to substitution of appointed counsel only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. *People v Bauder*, 269 Mich App 174, 193; 712 NW2d 506 (2005). Good cause for substitution exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. *Id*.

At a point in the proceedings, defendant requested that he be permitted to represent himself. Defendant later requested that he once again be appointed counsel. Defendant did not indicate any objection to the reappointment of his former counsel. Nevertheless, on appeal, defendant argues that it was error on the part of the trial court to reassign him the same attorney. Despite defendant's numerous and newfound assertions of disagreements in trial strategy and conflicts of interest with his attorney, the record does not support the existence of any such issues. As a result, defendant has failed to establish that good cause existed to remove his trial attorney and appoint substitute counsel.

In November 2004, the trial court deferred petitioner's request to represent himself. A hearing was held on February 8, 2005. Counsel was allowed to withdraw and petitioner was allowed to represent himself. Thereafter, petitioner decided that he no longer wished to represent himself and counsel was reappointed. Petitioner never asserted an objection to the reappointment of counsel. In the opinion of the undersigned, petitioner has not shown error in the reappointment of counsel to his case. More importantly, petitioner has not shown that the Michigan Court of Appeals' decision was unreasonable. Finally, petitioner has failed to show that his appellate counsel was ineffective.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for

habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 10 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: November 19, 2009

- 12 -